Richard S. Cohen (State Bar No. 004746)
Justin S. Pierce (State Bar No. 022646)
**JACKSON LEWIS LLP**
2390 East Camelback Road, Suite 305
Phoenix, AZ  85016
Tel. (602) 714-7044
Fax (602) 714-7045
E-mail:  cohenr@jacksonlewis.com
              piercej@jacksonlewis.com

Attorneys for Defendant Town of Buckeye

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Charles Clark,<br><br>          Plaintiff,<br>vs.<br><br>Town of Buckeye, a municipal corporation,<br><br>          Defendant. | Case No.  2:05-cv-1631-PHX-ECV<br>                2:05-cv-2026-PHX-ECV<br>(Consolidated)<br><br>**SUMMARY JUDGMENT MOTION AS TO DAMAGES AND REQUEST TO TERMINATE ACTION** |
| Kevin Charles Clark,<br><br>          Plaintiff,<br>vs.<br><br>Town of Buckeye, a municipal corporation, et al,<br><br>          Defendants. | |

- 1

Defendants request, pursuant to Federal Rule of Civil Procedure 56, that the Court grant summary judgment in their favor on the issue of damages. Summary judgment is warranted for three independent, yet equally compelling, reasons: First, even assuming a technical pre-termination due process violation occurred, Plaintiff can only recover nominal damages as a matter of law. Second, even if the Court found Plaintiff could recover more than nominal damages for a technical pre-termination due process violation, he never disclosed such damages and so Rule 37(c)(1) would bar him from presenting any evidence at trial. Finally, even assuming Plaintiff could recover more than nominal damages, and the Court allowed Plaintiff to present evidence notwithstanding his failure to timely disclose damages, there is still no issue for a jury because, as a matter of law, he cannot causally connect his alleged damages solely to a technical pre-termination violation. The following Memorandum of Points and Authorities and separate Statement of Facts support this Motion.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.    Background**

On February 14, 2008, this Court granted Defendants' summary judgment motion as to all claims. [Dk. 109] On August 5, 2009, the Ninth Circuit affirmed summary judgment in favor of Defendants as to all claims except for Plaintiff's pre-termination due process claim. [Dk. 120] For that one claim, the Court did not affirm summary judgment because, although it is undisputed that Plaintiff understood the charges against him at the time he was investigated for serious misconduct and had the opportunity to tell his side of the story, the Court could not find in the record on appeal where the Town had given Plaintiff final notice of which charges the Town Manager relied on in making the decision to terminate, or an opportunity to meet with the Town Manager to challenge that final decision before it took effect. [*Id.*, at 3] Consequently, the Court "remand[ed] for further proceedings." [*Id.*]

1  Plaintiff expressed in a status conference with the Court his belief that those
2  "further proceedings" required a full jury trial.  Thus, Defendants filed a second
3  summary judgment motion on February 5, 2010.  [Dk. 129]  In it, Defendants
4  explained that Plaintiff was entitled, at most, to nominal damages, and therefore, a full
5  trial was not warranted.  In response, Plaintiff submitted an affidavit relying on
6  information disclosed well after discovery had closed in this matter, and for which
7  Defendants never had the opportunity to take discovery.  [Dk. 132]  Consequently, the
8  parties submitted a stipulation, and the Court ordered, that Defendants' summary
9  judgment motion be withdrawn so that Defendants could take discovery concerning
10 the damages outlined in Plaintiff's recent affidavit.  [Dk. 133-34]

   Having had the opportunity now to take that discovery, the undisputed evidence
   makes it even more clear that this action must be dismissed.  As an initial matter, if
   this case was submitted to a jury, the Court would be required to instruct the jury that
   it could not award more than one dollar in nominal damages.  As such, a jury trial
   would be nothing more than a waste of the jury's, parties', and Court's time and
   resources.

   Moreover, even if Plaintiff was theoretically allowed to recover more than
   nominal damages, no reasonable juror could connect the alleged damages _only_ to a
   violation of due process solely at the pre-termination stage – a microscopic sliver in
   time that the undisputed evidence shows was not the "but for" cause of the damages
   Plaintiff has claimed throughout this lawsuit.   Therefore, Defendants respectfully
   request that the Court grant summary judgment as to damages by ordering that
   Plaintiff may only recover nominal damages.  With that order in place, Defendants
   stipulate that the Court may award Plaintiff the full dollar in nominal damages, and
   terminate this action.[1]

---

[1]  As this Court is aware, the Ninth Circuit did not – and indeed could not based on the Town's Summary Judgment Motion – conclude that the Town's procedures were

## II.     Only Nominal Damages Are Available to Plaintiff.

On a pre-termination due process claim, the Supreme Court has held that nominal damages not to exceed one dollar is the only remedy where the termination was ultimately determined to be justified. *Carey v. Piphus*, 435 U.S. 247, 263, 266-67 (1978). The Ninth Circuit has echoed that rule. *Knudson v. Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987) (noting that compensatory damages are only available if the underlying deprivation is ultimately determined to have been *unjustified*). Citing *Carey*, the Ninth Circuit in *Knudson* stated that "only nominal damages are recoverable for a deprivation of property determined to be otherwise justified." *Id.*; *see also Clemens v. Airport Auth.*, 69 F.3d 321, 332, n.14 (9th Cir. 1995) (citing *Knudson* favorably for the proposition that only nominal damages are recoverable under these circumstances); *Raditch v. United States*, 929 F.2d 478, 481, n.5 (9th Cir. 1991) ("[I]n § 1983 cases, a plaintiff can recover compensatory damages for a proven due process violation only if the deprivation was unjustified on the merits. *If, after post-deprivation procedure, it is determined that the deprivation was justified, a plaintiff can recover only nominal damages for the due process violation.*") (emphasis added) (citing *Carey*, *Knudson*, and *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 781 (9th Cir. 1982)).

In a very recent due process decision by the Ninth Circuit, the Court upheld a jury award of compensatory damages only because the jury had found that the plaintiff's termination was not justified. *Duffy v. City of Desert Hot Springs*, 2009 U.S. App. LEXIS 15937 (9th Cir. July 20, 2009). In so doing, citing *Carey* and

---

deficient as a matter of law. However, rather than incur the expense associated with preparing for and conducting a trial as to whether the Town's pre-termination procedures were or were not deficient here, the Town is willing to concede deficiency upon this Court's ruling that Plaintiff's only remedy is nominal damages. If deficiency as to the pre-termination hearing requirements were conceded, there would be no factual dispute for a jury to decide.

*Raditch*, the Court expressly noted that if the jury had found the termination to be justified, the plaintiff would have only been entitled to nominal damages. *Id*.

Other jurisdictions faced with this question follow the rationale outlined in the above Supreme Court and Ninth Circuit cases. *See, e.g., Casna v. City of Loves Park*, 574 F.3d 420, 426 (7th Cir. 2009) ("If the lack of a hearing did not cause Casna any pecuniary harm – that is, if her termination was nonetheless justified on the merits (a matter we do not decide today) – Casna may recover for her constitutional injury only nominal damages not to exceed one dollar.") (citing *Carey*); *Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004) ("[W]hen a defendant has deprived the plaintiff of liberty or property without affording him a hearing as required by the Due Process Clause, but the defendant proves that the adverse action would have been taken even if a proper and timely hearing had been held, the plaintiff has not proved compensable injury and is entitled only to nominal damages."); *Cifarelli v. Village of Babylon*, 93 F.3d 47, 50 (2d Cir. 1996) (affirming the District Court's holding that the plaintiff "had not met his burden of establishing a disputed issue of material fact sufficient to defeat summary judgment; except for allowing nominal damages, the district court granted the defendants' motion as to the due process claims"); *Baumgardner v. Secretary, United States Dep't of Hous. & Urban Dev.*, 960 F.2d 572 (6th Cir. 1992) ("In *Carey v. Piphus*, for instance, defendants appealed the lower court's ruling that plaintiffs would be entitled to 'substantial' damages for violation of their Fourteenth Amendment right to procedural due process even if the trial court found that the ultimate adverse action taken against plaintiffs was justified. In holding that such a finding would entitle plaintiffs to only nominal damages, the Court reasoned that, if defendants' adverse action was indeed justified, it would be inappropriate to presume that plaintiffs had suffered an actual, compensable injury.") (internal citations omitted) (concurring opinion); *Smith v. City of Chicago*, 913 F.2d 469, 473-474 (7th Cir. 1990)

(holding that because the underlying deprivation was justified, the plaintiff "has failed to suffer actual damages from the asserted constitutional deprivation, and his recovery was properly limited to nominal damages").

Here, even if we assume that the Town's pre-termination process was deficient, the Ninth Circuit affirmed this Court's determination that, as a matter of law, Plaintiff's termination was justified. [Dk. 109; Dk. 120] Therefore, because there are no other remaining claims in this lawsuit for which other damages could be awarded, all a jury could award Plaintiff is nominal damages not to exceed one dollar. Model Civ. Jury Instr. 9th Cir. § 5.6 ("Nominal damages may not exceed one dollar.").

### III. Even if the Law Did Permit Plaintiff to Recover More Than Nominal Damages, He Failed to Disclose Any Damages Related Only to the Pre-Termination Process.

Even if compensatory damages were available for deficiencies solely in the pre-termination process where the underlying termination was justified, Plaintiff would still not be entitled to those damages here because he first disclosed them more than three years after discovery closed and only *after* this Court and the Ninth Circuit took away from him the potential to recover the only damages he had claimed during the course of the lawsuit (which was related to an alleged wrongful termination, for which he cannot recover damages because the termination was not wrongful as a matter of law).

The Federal Rules require that a party must disclose "a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(iii). Failure to make that disclosure bars a litigant from using any non-disclosed information at trial. Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

      The only computation of damages Plaintiff ever disclosed was an expert report detailing economic damages as a result of an alleged "wrongful termination." Additionally, the compensatory damages Plaintiff alleged never had anything to do with the pre-termination process, but always spoke in terms of his alleged "wrongful termination." For example, Plaintiff's Rule 26(a) initial disclosure statement says only that "Plaintiff has suffered severe emotional distress as a result of his wrongful termination from the Town of Buckeye." [SOF ¶1] In fact, in response to the Town's specific interrogatory to "list any damages and/or ill effects plaintiff has sustained as a result of the events described in his complaint," Plaintiff responded that he suffered financial damages "as well as emotional damages as a result of the wrongful termination." [SOF ¶2]

      The bottom line is, although Plaintiff filed his lawsuit in June 2005, it wasn't until the end of February 2010 that Plaintiff first alleged the existence of any damages, much less a computation of those damages, relating to the pre-termination process. And even then, his 11th hour affidavit is perhaps the best evidence that he never previously disclosed damages resulting from any pre-termination procedural defect; it makes no sense that Plaintiff would submit an affidavit now if he could point to a previous disclosure of this information. As a result, even if the law permitted Plaintiff to recover more than nominal damages, he cannot now – after discovery closed more than two years ago, and after this matter has been up to and back from the Ninth Circuit – re-write his claim for damages by suggesting for the first time that he suffered compensatory damages as a result of the pre-termination process, rather than the termination itself. Rule 37 would mandate that any evidence of such damages be excluded.

### IV.     Plaintiff Cannot Satisfy His Burden to Establish a Causal Link Between the Pre-Termination Process and His Alleged Damages.

Finally, even if Clark was allowed to recover more than nominal damages, and even if the Court, in its discretion, allowed Clark to present his newly disclosed evidence in support of alleged damage from the pre-termination proceedings, summary judgment in favor of Defendants would still be appropriate because he cannot, as a matter of law, establish a causal link between the alleged damage and *only* the limited potential violation that may have occurred during the pre-termination process.  To be clear, Plaintiff cannot recover damages associated with

- the Town's decision to investigate Plaintiff for serious misconduct;
- the investigative process itself;
- the Town's substantive decision to terminate Plaintiff for misconduct;
- the post-termination appeal proceedings in which Plaintiff presented his case to a hearing officer, represented by counsel, in a trial-like setting over a three-day period; or
- the hearing officer's decision upholding Plaintiff's termination.

Rather, all we are talking about here is a very limited, technical issue: Plaintiff did not personally speak with the Town Manager between the time he was informed he was going to be terminated and the time the termination took effect, so that he could personally hear the Town Manager tell him which charges (if not all of them) caused the Manager to conclude that Plaintiff should be fired, so that Plaintiff could tell the Manager why he shouldn't terminate Plaintiff's employment – no more, no less.

As the Supreme Court has recognized:

> [W]here a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. But as the Court of Appeals held, the injury caused by a justified deprivation, including distress, is not properly compensable under § 1983.

*Carey v. Piphus*, 435 U.S. 247, 263 (1978) (internal footnote omitted). Thus, under this standard, Plaintiff would have the burden of establishing by a preponderance of the evidence that he suffered emotional distress that is directly attributable to the brief, 15-day period between receiving notice of his termination and his last day of employment, as opposed to the myriad other stressors in his life, including those flowing from being fired for serious misconduct.[2] Even assuming that Plaintiff suffered emotional distress during those 15 days, he cannot adequately parse out this alleged injury from the non-recoverable distress associated with his justified termination.

The decision in *Harrison v. Edison Bros. Apparel Stores* is instructive on this issue. In a scenario that is remarkably similar to the present case, the court was asked to determine whether the plaintiff had established that her alleged emotional distress was caused by events that took place during a particular 7-day period, as opposed to other stressors from different time periods. The court found that the plaintiff did not meet her burden:

> [A]n injured plaintiff must prove a causal connection between his or her injury and the tortious conduct of the defendant. *See Hogan v. Forsyth Country Club Co.*, 79 N.C. App. at 494-95, 340 S.E.2d at 123-24. *See also* W. Page Keeton et al., *Prosser & Keeton On The Law Of Torts* § 30, at 164-65 (5th ed. 1984). As also indicated above, this means that Ms. Harrison must prove a causal link between her emotional injuries and the

---

[2] Giving Plaintiff a 15-day window would actually be generous. The reality is, the Court should find that Plaintiff's window is just one day. On November 5, 2004 he was given a notice of termination, which told him his termination would take effect on November 20, 2004, and that he would be entitled to appeal that decision through the Town's administrative appeal process. [Dk. 98, Ex. 1] His attorneys wrote a letter to the Town, giving Plaintiff's side of the story on November 16, 2004, but also asking for an additional opportunity to be heard pre-termination. [*Id.*, at Ex. 4] Thus, Plaintiff couldn't have known he was not going to get any further pre-termination due process until November 19, 2004, which was the date Plaintiff was notified that his termination would be final the next day. Consequently, the time between Plaintiff finding out he was not going to get further pre-termination due process, and the time his termination took effect was only one day.

harassment that occurred between December 12-18, 1986.

In the context of a motion for judgment as a matter of law, the inquiry for the court in analyzing causation is whether the jury was presented with evidence "which shows a 'probability' and not mere 'possibility'" that causation existed as contended. *Ralston Purina Co. v. Edmunds*, 241 F.2d 164, 168 (4th Cir. 1957). "Alternative possibilities as to the cause of an event are not enough where the defendant is liable under one and not the others and where no basis for a rational choice among the alternatives is provided." *Id*. *See also Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241-42 (4th Cir. 1982).

Ms. Harrison has not proven such a causal link between her injuries and the events of December 12-18, 1986. At best, the evidence shows only a mere "possibility," not "probability," that causation exists as contended. In other words, Ms. Harrison has not presented evidence upon which a reasonable jury could find that the alleged sexual harassment of December 12-18, 1986, caused her injuries.

. . .

Ms. Harrison has suffered numerous stressors from December 1986 to the present. For example, prior to her hospitalization in May 1988, the evidence showed that Ms. Harrison had plans to be married, had severe difficulties with her prospective in-laws, and was pregnant. Thus, it is highly probable that Ms. Harrison's emotional problems were caused by the immediate stressors in her life in 1988, not experiences of December 12-18, 1986, at Jeans West. Indeed, Dr. Rose's diagnosis of Ms. Harrison in May 1988 included pregnancy. The Fourth Circuit's words merit repeating: "Alternative possibilities as to the cause of an event are not enough where the defendant is liable under one and not the others. . . ." As this evidence shows, at best, Plaintiff has only proven alternative possible causes of her emotional injury.

Similar alternative possibilities as to causation preceded Ms. Harrison's December 1988 hospitalization. After marrying Sanders, Ms. Harrison moved away from home for the first time and, in fact, moved six times with her husband by the end of 1988. Ms. Harrison experienced two miscarriages. There were pressures concerning this lawsuit, as well. Marital problems ensued resulting in separation in December 1988. Ms. Harrison made a "suicidal gesture" at that time by making a small cut on her wrist. Again, it is highly probable that the emotional disorders diagnosed by Dr. Rose were caused by the immediate stressors in Ms.

> Harrison's life in 1988, not experiences of December 12-18, 1986. In any case, no evidence has been presented causally connecting these problems and the week of December 12-18, 1986.
>
> . . .
>
> Thus, in summary, there is no doubt that Ms. Harrison has suffered from emotional distress over many years and is presently a very emotionally distraught person. However, there is also very little doubt that these emotional problems were caused by stressors other than the experiences of December 12-18, 1986. In the least, these other stressors are possible alternative causes of Ms. Harrison's emotional injuries, and there is no evidence presented as to which possible cause is the correct one. Even assuming that sexual harassment occurred between December 12 and December 18, 1986, assuming that Edison had notice on December 12, 1986, of Wall's propensity to engage in tortious conduct, assuming that Edison did not exercise ordinary care, and assuming that Plaintiff suffers and has suffered severe emotional distress, the casual link between Plaintiff's emotional problems, and the harassment of December 12-18, 1986, is too remote as a matter of law.

814 F. Supp. 457, 464-466 (M.D.N.C. 1993) (footnotes and some internal citations omitted).

The same rationale applies here. Even assuming a due process violation actually occurred, Plaintiff cannot, as a matter of law, establish a "probability," rather than a "mere possibility," that his alleged damages were caused by a technical due process violation that lasted at most 15 days. On the other hand, the undisputed record shows that there are numerous alternative (and much more probable) causes of his purported damages. Most prominently, Plaintiff, by his own admission, suffered emotional distress as a result of his employment being terminated. In fact, he testified that the emotional distress started while he was being investigated for serious misconduct, long before the pre-termination process even began, let alone when a deprivation actually occurred. [SOF ¶3] In addition, the undisputed evidence shows that Plaintiff saw a counselor for the first time a full 18 months after the 15-day window where he is claiming damages, where he complained that he was very angry;

that he felt he was "set up," that "he did not do anything wrong," and that he "obsessed" over these facts "for the past 18 months," which caused him to be "depressed," and even have "suicidal thoughts . . . due to the extreme stress." [SOF ¶4] On another visit, Plaintiff reported to his counselor that he was "very stressed" over the fact that he was fired and "did not do anything wrong." [SOF ¶5] In that meeting, he "admits he put way too much emphasis on his work and in ways neglected his family." [SOF ¶6] He reported being "very angry and stressed," and even had trouble sleeping. [SOF ¶7] Again, the damage that Plaintiff himself reported had to do with his actual termination – a claim both this Court and the Ninth Circuit held was entirely lawful.

He also reported, understandably, having "financial stressors at home with having no job for over 18 months." [SOF ¶8] He reported on another visit that he was "very stressed out about current financial situation," and that he "struggled with feelings of inadequacy as a provider." [SOF ¶9] He continued to feel "very stressed about" his financial situation, and reported being "humiliated" because he had to borrow money from relatives. [SOF ¶10] Even recently, Plaintiff testified in his deposition that the financial stress or anxiety that has been placed on him as a result of his termination was very high. [SOF ¶11]

At one point, Plaintiff reported to his counselor that he was "feeling much better overall," but he was "still saddened by loss of job." [SOF 12] Importantly, even 18 months after his termination, Plaintiff was complaining of "increased stress and anxiety in life" [SOF ¶13] – all of which related to the fact that he no longer had a job, and none of which is compensable for a pre-termination procedural violation. Indeed, dispositive of this issue is the fact that he reported to his counselor that he "suffered tremendous stess [sic], anxiety and depression *over past 18 months*…." [SOF ¶14]

These facts demonstrate that Plaintiff cannot link the alleged distress to the brief window of 15 days (at most), which occurred more than 18 months before he started meeting with his counselor.  In fact, Plaintiff still thinks, to this day, that the *post-*termination process violated his due process rights (an alleged violation that he has repeatedly complained caused him damage), notwithstanding the fact that both this Court and the Ninth Circuit rejected his claim.  [SOF ¶15]  Now, with the core of his complaint and alleged damage gutted by the decision of the Court of Appeals, Plaintiff suggests to this Court that none of that financial stress, depression, or suicidal thoughts that resulted from the actual termination of his employment mattered; instead, he asks the Court to allow him to reverse his story and argue to a jury that what *really* caused him distress was the fact that he did not personally meet with the Town Manager *before* his termination took effect so that he could tell the Manager why he shouldn't be fired (an opportunity he indisputably got post-termination).  In the face of the undisputed evidence and the record in this case, the fact that Plaintiff continues to press this lawsuit by claiming his damages resulted from at most a technical pre-termination procedural deficiency is disturbing and nothing short of an abuse of the judicial process.

As another court recently explained:  "Causation can be particularly difficult to prove in actions alleging due process violations because the plaintiff must demonstrate that his injuries would not have occurred *but for* the defendant's failure to provide proper procedures.  If the deprivation would have occurred despite the extra process--in other words, if the deprivation was justified--the plaintiff is entitled only to nominal damages."  *Woodard v. Andrus*, 649 F. Supp. 2d 496, 506-07 (W.D. La. 2009) (emphasis added).  Here, Plaintiff has not provided any basis for a jury to conclude that his emotional injuries resulted from a pre-termination technical violation, rather than the fact that he was placed on leave pending a significant investigation and ultimately the loss of his job.  Because Plaintiff's own testimony

and the other undisputed evidence shows that he cannot prove that his injuries would not have occurred "but for" any deficient pre-termination process, his claim for compensatory damages would be fatally flawed, even if the law did permit him to recover more than nominal damages.

### V.   Conclusion

Because Plaintiff can only recover nominal damages, and because Defendants are willing to stipulate to a deficiency in the pre-termination process upon a ruling that Plaintiff is only entitled to nominal damages, Defendants respectfully request that the Court grant summary judgment and order that Plaintiff is only entitled to recover nominal damages, order that Plaintiff be awarded one dollar in nominal damages, and then terminate this action.

DATED this 30th day of June 2010.

**JACKSON LEWIS LLP**

By:   /s/ Justin S. Pierce
Richard S. Cohen
Justin S. Pierce
Attorneys for Defendant Town of Buckeye

### **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

Phil S. Flemming
Yen Pilch Komadina & Flemming, P.C.
6017 N. 15th Street
Phoenix, AZ 85014
Attorneys for Plaintiff

   /s/Debbie J. Mattatall

4836-3658-9062, v. 1

- 14 -